**FIRST DIVISION**
**PHIPPS, C. J.,**
**DOYLE, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 10, 2015**

# In the Court of Appeals of Georgia

A15A0118. SCHLESSELMAN v. THE STATE.                  BO-005C

BOGGS, Judge.

A jury found Steven Schlesselman guilty of computer child exploitation and attempted child molestation. Schlesselman appeals, challenging the sufficiency of the evidence. For reasons that follow, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and the evidence must be construed in the light most favorable to the verdict. See *Collins v. State*, 276 Ga. App. 358 (623 SE2d 192) (2005). We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find the defendant guilty beyond a reasonable doubt. See id.

So viewed, the evidence shows that in May 2012, Effingham County Sheriff's Investigator Joe Heath commenced a proactive child internet exploitation investigation. As part of the investigation, he created a profile on motherless.com, a social media website catering to persons with various sexual fantasies and fetishes, many involving children. Describing himself as a 39-year-old single mother trying to make money with her daughter's help, Heath posted the profile under the user name "GeorgiaJenn" and asked other site users to send "her" an email if "you are in Georgia and like young and just wanna hook up."

Several months later, Heath received an email from an individual who asked whether GeorgiaJenn "still needed some financial help." Although the individual used the screen name "Loadedgunaz," the email identified Schlesselman as the sender. Heath responded as GeorgiaJenn, indicating that she was "looking for $150 and offering a 14 year old female to keep [you] company for an afternoon." Loadedgunaz replied that he wanted to spend time with GeorgiaJenn and might be flying into Atlanta in December. GeorgiaJenn emailed back, stating: "I am currently seeing someone, but if you were truly interested in seeing my daughter that would be fine." Noting that she lived several hours from Atlanta, she suggested that Loadedgunaz

spend the night at her house. In response, Loadedgunaz inquired "what a night of companionship and lodging might go for?" GeorgiaJenn replied:

> My boyfriend will not be here.....but you must understand you would be welcome in my house but [I] do not cheat. My daughter likes older men and sees a couple on a regular basis. She is 14, and more than willing to make your stay a pleasant one. 1 nights [sic] lodging will be $175.......fair?

Loadedgunaz responded: "That sounds more than fair. What guidelines do u have for the overnight visit?" Explaining the "guidelines," GeorgiaJenn stated, "no hitting and no anal....other than that she is pretty open." Loadedgunaz replied, "[s]ounds good."

Shortly before the scheduled visit, Loadedgunaz provided GeorgiaJenn with a cell phone number and asked her to text him "if we are on." GeorgiaJenn assured him that she and her daughter were "ready for [the] visit." On the appointed day, the two texted back and forth, arranging to meet at a gas station. Heath and several other officers subsequently found Schlesselman at the meeting place. They arrested him and, during a search incident to arrest, discovered $297 in cash on his person. The officers also seized a cell phone from Schlesselman's car. The telephone number assigned to the phone matched the contact number that Loadedgunaz had provided

3

to GeorgiaJenn. A search of the cell phone also revealed text messages about the meeting and a recent internet search for "internet underage sex stings in [G]eorgia."

1. Schlesselman argues that the State presented insufficient evidence to support his conviction for attempted child molestation. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. To establish attempted child molestation, therefore, the State was required to prove that Schlesselman took a substantial step toward doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or [himself]." OCGA § 16-6-4 (a) (1).

According to Schlesselman, he did not take a substantial step toward committing child molestation. We disagree. Through numerous email communications with GeorgiaJenn, whom he believed to be the mother of a 14-year-old girl, Schlesselman arranged to pay for a night of "companionship" with the child. He asked for and approved "guidelines" for the night, which can be construed as sexual in nature. He then traveled to Georgia by plane, drove from Atlanta to a

4

designated meeting point, and waited with almost $300 in cash for GeorgiaJenn to arrive. At some point, he also researched underage sex stings on his cell phone.

Although Schlesselman's communications did not describe any particular sexual acts that he intended to perform with the child, "[i]ntent, which is a mental attitude, can be inferred." (Punctuation omitted.) *Collins*, supra at 359 (1). And whether a defendant possessed the necessary intent is "a question of fact for the jury after considering all the circumstances surrounding the acts of which the accused is charged." (Punctuation omitted.) Id. Given the evidence presented, the jury was authorized to conclude that, with the intent of engaging in an immoral or indecent sexual act with a 14-year-old girl, Schlesselman took a substantial step toward committing the crime of child molestation. See *Lopez v. State*, 326 Ga. App. 770, 774 (1) (b) (757 SE2d 436) (2014) (attempted child molestation conviction authorized where defendant communicated with an adult whom he believed to be a child and took substantial steps to meet that person to engage in sexual activity); *Brown v. State*, 321 Ga. App. 798, 800 (1) (743 SE2d 474) (2013) (fact-finder authorized to conclude that defendant took a substantial step toward committing child molestation by traveling to an arranged location to have sexual intercourse with someone he

5

believed to be a 14-year-old girl). Accordingly, the evidence was sufficient. See OCGA § 16-4-1; OCGA § 16-6-4 (a) (1); *Lopez*, supra; *Brown*, supra.

2. The jury also found Schlesselman guilty of violating the Computer or Electronic Pornography and Child Exploitation Prevention Act, which, at the time of the offense, provided:

> It shall be unlawful for any person intentionally or willfully to utilize a computer on-line service or Internet service, including but not limited to a local bulletin board service, Internet chat room, e-mail, on-line messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by such person to be a child to commit any illegal act described in . . . Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation.

OCGA § 16-12-100.2 (d) (1) (2012).

On appeal, Schlesselman argues that this conviction must be reversed because he had no direct contact or communication with a child or someone he believed to be a child. Instead, he communicated only with GeorgiaJenn. He thus claims that he did not "solicit a person he believed to be a child to commit illegal acts," as alleged in the indictment.

6

In *State v. Cosmo*, 295 Ga. 76, 81 (757 SE2d 819) (2014), our Supreme Court rejected a similar argument, finding that direct communication with the child was not necessary for a conviction under OCGA § 16-12-100.2 (d) (1). Although Schlesselman acknowledges *Cosmo*, he argues that it is distinguishable from this case because the *Cosmo* defendant was charged with *attempting* to solicit a minor to do illegal acts, while he was charged with soliciting those acts. Schlesselman asserts that communication through an intermediary is sufficient for attempted solicitation, but insufficient for solicitation itself. In his view, direct communication between the defendant and child must be established to prove solicitation.

Again, we disagree. It is true that OCGA § 16-12-100.2 (d) (1) criminalizes both solicitation and attempted solicitation of a minor, and much of *Cosmo*'s analysis focuses on the requirements for proving attempt. The *Cosmo* Court, however, also found more generally that "a solicitation of another may be made by communication with a third party." *Cosmo*, supra at 80. Without limiting its discussion to cases involving attempted solicitation, the Court explained:

> [j]ust as solicitation of prostitution can be made through a third party pimp, solicitation of a child to commit the acts prohibited by OCGA § 16-12-100.2 (d) (1) may be conducted through an adult intermediary

7

who is believed to be in a position of trust or authority with respect to the child.

The Court thus made clear that solicitation can occur through a third party. And in this case, we find the evidence of solicitation sufficient.

In the criminal context, the term "solicit" means "to command, authorize, urge, incite, request, or advise another to commit a crime." Black's Law Dictionary (5th ed. 1979); see also OCGA § 16-4-7 (a person commits criminal solicitation "when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct"). Here, the jury was authorized to find that, through email communications with GeorgiaJenn, Schlesselman urged and requested a person he believed to be a 14-year-old girl to engage in immoral or indecent acts, in violation of OCGA § 16-6-4 (a) (1). As noted above, the communications did not reference particular sexual acts. But the jury could conclude – based particularly on the agreement to pay for a night of companionship with GeorgiaJenn's child, Schlesselman's request for "guidelines" with respect to the overnight visit, and GeorgiaJenn's response to the request – that the purpose of the solicitation was a

sexual encounter. The evidence, therefore, was sufficient to sustain his conviction for internet child exploitation. See OCGA § 16-12-100.2 (d) (1); *Cosmo*, supra at 81.

*Judgment affirmed. Phipps, C. J. and Doyle, P. J., concur*.