**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A2138. REID v. THE STATE.

RICKMAN, Judge.

Following a bench trial, Richard Allen Reid was convicted on one count of criminal attempt to commit child molestation and two counts of computer pornography. On appeal, Reid contends that the evidence was insufficient to support his conviction for criminal attempt to commit child molestation and that the evidence established the affirmative defense of entrapment. For the following reasons, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes

beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence showed that in the summer of 2015, an investigator with the Effingham County Sheriff's Office placed an ad on Craig's List stating that he was a female and was "home alone bored." Reid responded to the ad, "I am very much interested in hanging out. I'm a lot of fun to be around but will let you be the judge of that if you're interested. Hit me up and let's see what kind of fun we can get into." When the investigator replied that she was 15-years-old, Reid stated, "[o]h wow, but you're only 15 though."

The investigator sent a photograph purporting to be a photograph of the 15-year-old girl, but it was actually a photograph of a female deputy at the sheriff's office, and Reid sent a photograph of himself. After communicating through Craig's List, Reid and the investigator, posing as the 15-year-old girl, began exchanging text messages. The investigator testified that Reid "constantly ask[ed] for nude photos of the child" and stated that he was a "horny old man." Reid sent text messages to the investigator stating that the child was a "very attractive young lady" and that he was

"really a lot older than [her]," Reid asked the investigator what kind of "fun" she liked and he replied, "I lik all kinds and mayb even new stuff." Reid responded, "[d]on't tease me girl[.]" Reid expressed concern to the investigator about being discovered by law enforcement and told him to "get rid of" all of their conversations so that a parent did not discover them.

Reid and the investigator arranged to meet at a gas station. Prior to their meeting, Reid requested more revealing photos that showed more skin so that he would have something to look forward to. The investigator testified that Reid stated, "[w]e can still play and get all worked up and be ready to have fun when I do make it up there" and that he wanted to "see [her] naked before I see you Friday, that'd also prove that you're serious." Reid confirmed that the investigator would be alone when he met with the child after work and stated that he was "pretty excited" about meeting with her. After they met, Reid planned to go back to the child's house.

Once Reid indicated that he was close to the arranged meeting location, the investigator began surveillance. The investigator observed a male in a Jeep pull into a parking space toward the end of the parking lot. The male sat in his vehicle for several minutes without exiting before backing up and attempting to leave the location. Thereafter, the investigator conducted a traffic stop and identified the male

3

as Reid. The investigator testified that Reid initially stated that "he was just simply riding around" but then admitted "that he was coming to meet a female that he knew was underage."

Reid was indicted for one count of criminal attempt to commit child molestation and two counts of computer pornography. Reid entered a guilty plea to all counts of the indictment but subsequently successfully moved to withdrawal the guilty plea. Following a bench trial, Reid was convicted on all counts. Reid filed a timely motion for new trial, which was denied by the trial court. This appeal follows.

1. Reid contends that the evidence was insufficient to support his conviction for criminal attempt to commit child molestation. Specifically, Reid argues that he never took a substantial step towards committing child molestation or, alternatively, that he abandoned any attempt to commit to child molestation. We disagree.

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. To establish that Reid attempted to commit child molestation, the State was required to prove that he took a substantial step toward doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires

4

of either the child or the person." OCGA § 16-6-4 (a) (1). "[W]hether a particular act is "immoral or indecent" is a [question for the factfinder] that may be determined in conjunction with the intent that drives the act." *Slack v. State*, 265 Ga. App. 306, 307 (1) (593 SE2d 664) (2004).

The communications between Reid and the alleged child need not describe the particular sexual acts that he intended to engage in with the child to establish intent because "intent, which is a mental attitude, can be inferred." (Citation and punctuation omitted.) *Schlesselman v. State*, 332 Ga. App. 453, 455 (1) (773 SE2d 413) (2015). "And whether a defendant possessed the necessary intent is a question of fact for the [factfinder] after considering all the circumstances surrounding the acts of which the accused is charged." (Citation and punctuation omitted.) Id.

Here, Reid communicated with someone he believed to be a 15-year-old girl. Reid asked the alleged child repeatedly for nude photographs, told her that he was a horny and dirty old man, and asked her not to "tease" him when she told him that she would like to try new things. Prior to Reid's arranged meeting with the alleged child, he told her they could "play and get all worked up and be ready to have fun" before meeting, that he wanted to see her naked to prove that she was serious, and that he was "pretty excited" about meeting her. This was enough evidence for the trial court

5

to determine that, with the intent toward doing an immoral or indecent act with a 15-year-old girl, Reid took a substantial step toward committing child molestation by arranging to meet the child, and traveling to the meeting place. See *Schlesselman*, 332 Ga. App. at 455 (1) (affirming defendant's conviction for attempted child molestation where the defendant arranged to pay for a night of "companionship" with a 14-year-old girl and drove to the meeting location); *Lopez v. State*, 326 Ga. App. 770, 774 (1) (b) (757 SE2d 436) (2014) ("We have held that a conviction of attempted child molestation is authorized where the evidence shows that the defendant communicated with an adult whom the defendant believed to be a child under sixteen years old and took substantial steps to meet with that person to engage in sexual activity that would constitute child molestation.").

Alternatively, Reid argues that he abandoned any criminal purpose when he left the arranged meeting place without exiting his vehicle. "When a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose." OCGA § 16-4-5 (a). "[W]hen a defendant raises and testifies in support of an affirmative defense, the State has the

burden of disproving that defense beyond a reasonable doubt." (Citation, punctuation, and footnote omitted.) *Muse v. State*, 323 Ga. App. 779, 782 (1) (748 SE2d 136) (2013).

Here, Reid did not testify and he argued that he never had any "intent to do the things that were specifically listed in the State's indictment, and that was criminal attempt to commit child molestation." However, he still alleges that evidence presented at trial showed he abandoned any criminal purpose. The evidence established that, prior to the arranged meeting, Reid expressed concern that he would be discovered by law enforcement or the child's parents, and that Reid was under law enforcement surveillance the entire time he was at the gas station. After Reid was apprehended, he never explained to the investigator why he left the gas station or expressed a change of heart. "It was for the [factfinder] to determine whether the State met any burden to disprove an affirmative defense of abandonment—a determination which the [factfinder] made in the State's favor." (Footnote omitted.) *Muse*, 323 Ga. App. at 783 (1). Accordingly, we find that the trial court's determination that the State met any burden to disprove the affirmative defense of abandonment was supported by the evidence. See id.; *Bentley v. State*, 261 Ga. 229, 230 (2) (404 SE2d 101) (1991).

2. Reid contends that the evidence established the affirmative defense of entrapment, and that he was entrapped to commit computer pornography.

"Entrapment is an affirmative defense that is established by showing that (1) the idea for the crime originated with the State agent; (2) the defendant was induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant was not predisposed to commit the crime." *Logan v. State*, 309 Ga. App. 95, 97 (1) (a) (709 SE2d 302) (2011).

> As a general rule, in order to raise the defense of entrapment, the defendant must first admit the commission of the crime and then show that he did so because of the unlawful solicitation or inducement of a law enforcement officer. The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission. But, if a reasonable inference of entrapment may be drawn by a rational jury from the State's evidence, the defendant is entitled to a jury charge on entrapment unless he has presented evidence of entrapment inconsistent with his denial of the commission of the crime.

(Citation and punctuation omitted). Id. "If the defendant establishes a prima facie case of entrapment, the burden is then upon the State to disprove entrapment beyond a reasonable doubt. The determination of whether the defendant was entrapped is for

8

the [factfinder] unless the uncontroverted evidence demands a finding of entrapment." Id. at 97-98 (1) (a).

As noted in Division 1, Reid did not testify or present any other evidence admitting that he committed the charged crimes. The evidence showed that after the alleged child revealed that she was 15 years old, Reid continued to communicate with her and never reported her to Craig's List,[1] he repeatedly asked her for naked pictures, and he expressed excitement after arranging to meet her in person. Additionally, Reid was concerned that he would be discovered by law enforcement or the alleged child's parents. Accordingly, the evidence supports the trial court's conclusion that entrapment did not occur. See *Logan*, 309 Ga. App. at 98 (1) (a) (finding that the evidence supported jury's conclusion that there was no entrapment where the defendant did not testify, continued communicating with the child on Craig's List, and initiated the sexual conversation).

*Judgment affirmed. Markle, J., concurs, and McFadden, P. J., concurs in part to Division 2 and dissents in part to Division 1.**

---

[1] "The website requires users to verify that they are 18 years old in order to post advertisements in the section in question." *Logan*, 309 Ga. App. at 98 (1) (a), n. 9.

**\*DIVISION 1 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY.**

**COURT OF APPEALS RULE 33.2(a)."**

# In the Court of Appeals of Georgia

A18A2138. REID v. THE STATE.

McFADDEN, Presiding Judge, concurring in part and dissenting in part.

I concur with the decision of the majority to affirm Reid's conviction on the computer pornography counts (Division 2), but I respectfully dissent to the decision to affirm his conviction for criminal attempt to commit child molestation (Division 1) because the state did not meet its burden of disproving Reid's affirmative defense of abandonment.

As the majority explains, abandonment is an affirmative defense to the offense of criminal attempt. OCGA § 16-4-5. By its terms, OCGA § 16-4-5 (a) makes this

affirmative defense available to persons whose "conduct would otherwise constitute an attempt to commit a crime[.]" The question before us is whether Reid "abandoned his effort to commit the crime [of child molestation] under circumstances manifesting a voluntary and complete renunciation of his criminal purpose." Id.

This is a classic case of abandonment. Reid drove to the scene of a planned crime, hesitated, then drove away. That's really all we know. The undisputed evidence at the bench trial showed that, shortly before the arranged meeting time, Reid stopped responding to the investigator's messages and that he left the arranged meeting place after a few minutes. Citing this evidence, Reid's counsel argued to the trial court that he had abandoned any effort to commit the crime.

So the state had the burden of disproving Reid's affirmative defense beyond a reasonable doubt. See *Bishop v. State*, 271 Ga. 291 (2) (519 SE2d 206) (1999) ("When a defendant raises an affirmative defense and offers evidence in support thereof, the [s]tate has the burden of disproving that defense beyond a reasonable doubt."). Accord *Bunn v. State*, 284 Ga 410, 413 (3) (667 SE2d 605) (2008).

The state could have met that burden by proving that Reid's departure "result[ed] from, (1) [a] belief that circumstances exist[ed] which increase[d] the probability of detection or apprehension . . . or which render[ed] more difficult the

2

accomplishment of the criminal purpose; or (2) [a] decision to postpone the criminal conduct until another time." OCGA § 16-4-5 (b).

But the state offered no evidence to show Reid's frame of mind when he decided to leave without meeting the girl with whom he thought he had been communicating — other than the departure itself. Unlike in *Muse v. State*, 323 Ga. App. 779, 782 (1) (748 SE2d 136) (2013), there is no evidence that Reid realized that he was under law enforcement surveillance when he left. The fact that Reid did not explain his reason for leaving, either to the investigator at the time or to the court at trial, cannot be said to supply that deficiency — Reid was under no obligation to explain.

The state did present circumstantial evidence that on earlier occasions Reid had seemed concerned with being caught. But that is not enough. Abandonment inspired by the general deterrent effect of the criminal law is still abandonment. The state's burden was to disprove a "voluntary and complete renunciation of his criminal purpose," which it could have done by proving that Reid departed because he perceived circumstances increasing his risk of being caught on this particular occasion or because he decided merely to postpone the crime. OCGA § 16-4-5. Evidence of Reid's generalized fear of being caught cannot carry that burden. See

3

generally Comment 8 to Model Penal Code § 5.01, Part I Commentaries, vol. 2, at 356-357 ("A 'voluntary' abandonment occurs when there is a change in the actor's purpose that is not influenced by outside circumstances. . . . A reappraisal by the actor of the criminal sanctions applicable to his contemplated conduct would presumably be a motivation of the voluntary type as long as the actor's fear of the law is not related to a particular threat of apprehension or detection.").

The evidence before us does not tell us why Reid stopped trying to commit the crime and so does not provide a basis "from which [the trial court] could exclude the very reasonable alternative hypothesis that [Reid had voluntarily and completely renounced any criminal purpose when he left the meeting place]." *Prater v. State*, 279 Ga. App. 527, 531 (3) (b) (631 SE2d 746) (2006) (citation omitted). See OCGA § 24-16-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). Because the state did not meet its burden of disproving Reid's affirmative defense, we should reverse his criminal attempt conviction.

4